# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| BERNARD L. MORGAN and MARILYN L. MORGAN, husband and wife,<br><br>       Plaintiff,<br><br>       vs.<br><br>FAIRWAY NINE II CONDOMINIUM ASSOCIATION, INC., an Idaho corporation; PIONEER WEST PROPERTY MANAGEMENT LLC, an Idaho limited liability company; JOHN HAASE, an individual; STEVE MORELAND, an individual; HARVEY HEINRICHS, an individual; KAREN PEDERSON, an individual; PHIL SYRDAL, an individual; and ANNE JACOBI, an individual<br><br>       Defendants. | Case No.: 1:13-cv-00481-EJL-REB<br><br>**REPORT AND RECOMMENDATION RE:**<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(Docket No. 54)<br><br>PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br>(Docket No. 58)<br><br>PLAINTIFFS' MOTION TO DISMISS AND/OR STRIKE DEFENDANTS' COUNTERCLAIM<br>(Docket No. 60)<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>PLAINTIFFS' MOTION TO STRIKE AFFIDAVITS OF JACK HAASE, DANIEL FELDMAN, THOMAS GROHMANN, HOWARD BANCHIK, KEN DOWNIE, EILEEN JUDDELL, AND DAVE TOWN<br>(Docket No. 56)<br><br>DEFENDANTS' MOTION TO AMEND ANSWER TO INCLUDE VERIFIED COUNTERCLAIM<br>(Docket No. 68)<br><br>PLAINTIFFS' SECOND MOTION TO STRIKE<br>(Docket No. 73)<br><br>DEFENDANTS' MOTION TO STRIKE THE AFFIDAVIT OF MARILYN MORGAN<br>(Docket No. 75) |

Now pending before the Court are the following seven motions: (1) Defendants' Motion for Summary Judgment (Docket No. 54); (2) Plaintiffs' Motion to Strike Affidavits of Jack Haase, Daniel Feldman, Thomas Grohmann, Howard Banchik, Ken Downie, Eileen Juddell, and Dave Town (Docket No. 56); (3) Plaintiffs' Motion for Partial Summary Judgment (Docket No. 58); (4) Plaintiffs' Motion to Dismiss and/or Motion to Strike Defendants' Counterclaim (Docket No. 60); (5) Defendants' Motion to Amend Answer to Include Verified Counterclaim (Docket No. 68); (6) Plaintiffs' Second Motion to Strike (Docket No. 73); and (7) Defendants' Motion to Strike the Affidavit of Marilyn Morgan (Docket No. 75).

After careful consideration of the record and oral argument of counsel, the Court is fully advised and enters the following Report and Recommendation and Memorandum Decision and Order:

## I.  BACKGROUND

Plaintiffs Bernard and Marilyn Morgan are long-time owners of a condominium residence in Sun Valley, Idaho.  They allege to suffer from disabilities requiring that their home have cool, filtered air in a climate-controlled environment, and because of such disabilities, they installed an outside, refrigerated air conditioning unit on August 21, 2013 to regulate the temperature within their condominium residence.  Doing so, however, violated the covenants, conditions, and restrictions ("CCRs") of the condominium development, which required that "[n]o . . . installation of air conditioning or other machines shall be installed on the exterior of the building or be allowed to protrude through the walls, the windows, or the roof of the building, unless the prior written approval of the Board of Directors [of the homeowners' association ("HOA")] is secured."

According to Plaintiffs, they had no choice but to install the air conditioning unit because Defendants refused to consider their repeated requests to address their medical issues and needs. Defendants disagree, and argue the Plaintiffs' alleged disabilities, even if accepted to exist, did not require the installation of an air conditioning unit of the sort selected by Plaintiffs. In any event, due to the air conditioning unit's installation, Defendants assessed (or at least threatened to assess) fines against Plaintiffs for violating the CCRs and, later, recorded a lien upon their condominium.

This ongoing contretemps ultimately led to the filing of Plaintiffs' Amended Verified Complaint, which asserts six claims – three claims premised upon provisions of the federal Fair Housing Act ("FHA"), alongside a claim for negligence, a claim for breach of the covenant of good faith and fair dealing, and a claim for negligent and/or intentional infliction of emotional distress. Defendants seek to have the case dismissed through their Motion for Summary Judgment, which contains arguments that Plaintiffs have no claim under the FHA and, by extension, no support as a matter of law for their related state law claims. Specifically, Defendants contend (1) that Plaintiffs have never been denied an FHA required "accommodation" involving cool, filtered air; (2) that the as-installed air conditioning unit (outside refrigerated) is not "necessary" to provide the requested accommodation, and relatedly that the HOA-approved air conditioning systems (water-cooled and inside room-based) are reasonable options for providing the allegedly necessary accommodation; and (4) that Plaintiffs cannot prove they actually suffer from a "handicap" entitling them to an accommodation as to such concerns in any event.[1]

---

[1] Separately, Defendants argue that the individually-named Defendants have been improperly named and should be dismissed.

In opposition, and in support of their own Motion for Partial Summary Judgment, Plaintiffs reject *in toto* Defendants' arguments, responding (1) that they are handicapped and that Defendants were aware of this fact; (2) that their request for an accommodation was reasonable and necessary to allow an equal opportunity to use and enjoy their home; and (3) that Defendants refused their requested accommodation in violation of the FHA.

## II.  REPORT/DISCUSSION

### A.   The Cross-Motions for Summary Judgment

#### 1.    The Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence in a light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that there is no material factual dispute, and the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  *See Celotex*, 477 U.S. at 324.  Material facts which would preclude summary judgment are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The relevant substantive law will determine which facts are material for purposes of summary judgment.  *See id*.

Where, as here, both parties move for summary judgment, the summary judgment standard does not change, and the court must evaluate each party's motion on the merits.  *See, e.g.*, *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 234 P.3d 739, 742 (Idaho 2010) (citation omitted); *see also Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009) (applying traditional summary judgment standards to cross-motions for summary judgment in ERISA benefits denial case).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing there is no genuine issue of material fact by demonstrating an "absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party establishes an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosp. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. *See Celotex*, 477 U.S. at 323.

Where the moving party instead bears the burden of proof on an issue at trial, "it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case." *Sabatino v. Liberty Life Assur. Co. of Boston*, 286 F. Supp. 2d 1222, 1229 (N.D. Cal. 2003) (citing *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994)).

2. <u>The Fair Housing Act and Plaintiffs' Claims Against Defendants</u>

Section 3604 of the FHA deals with discrimination in the sale or rental of housing, and section 3604(f) deals with discrimination against people with handicaps in particular. In pertinent part, "discrimination" includes:

> a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises . . . . [or] a refusal to make reasonable accommodations in rules, policies, practices,

or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . .

42 U.S.C. § 3604(f)(3)(A) & (B). Therefore, the FHA "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons," as to both physical accommodations and administrative policies/rules governing a dwelling and its environs. *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994).

With this statutory backdrop in mind, to make out a discrimination claim under the FHA for failure to reasonably accommodate, Plaintiffs must demonstrate that (1) they suffer from a handicap as defined by the FHA; (2) Defendants knew or reasonably should have known of the Plaintiffs' handicap; (3) an accommodation of the handicap may be necessary to afford Plaintiffs an equal opportunity to use and enjoy their dwelling; (4) the accommodation is reasonable; and (5) Defendants refused to make the requested accommodation. *See Hayden Lake Recreational Water and Sewer Dist. v. Haydenview Cottage, LLC*, 835 F. Supp. 2d 965, 981 (D. Idaho 2011) (citing *DuBois v. Assoc. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *also compare* Defs.' Mem. in Supp. of MSJ, p. 4 (Docket No. 54, Att. 1), *with* Pls.' Mem. in Supp. of Mot. for PSJ, p. 4 (Docket No. 58, Att. 1). Through their respective Motions for Summary Judgment, Plaintiffs and Defendants argue that each of these elements are (or are not, as the case may be) met as a matter of the law.

> *a.    Evidence Exists that Plaintiffs Could Be Handicapped Under the FHA*

The FHA defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities, a record of having such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h)(1-3). The Code of Federal Regulations further defines those terms used to define handicap:

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 6**

- The term *physical or mental impairment* includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism.

- *Major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

- *Has a record of such an impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

- *Is regarded as having an impairment* means: (1) [h]as a physical or mental impairment that does not substantially limit one or more major life activities but that is treated by another person as constituting such a limitation; (2) [h]as a physical or mental impairment that substantially limits one or more major life activities only as a result of the attitudes of others toward such impairment; or (3) has none of the impairments defined in paragraph (a) of this definition but is treated by another person as having such an impairment.

24 C.F.R. § 100.201(a)(2), (b), (c) & (d)(1-3) (emphasis in original).

Within their Amended Complaint, Plaintiffs allege that they "suffer medical issues which have caused disabilities . . . mak[ing] it necessary that they have cool, filtered air in a climate-controlled environment, i.e., air conditioning in their condominium . . . ." Am. Verified Compl., ¶¶ 16 & 17 (Docket No. 40). Defendants neither argue nor offer any evidence that Plaintiffs are absolutely not handicapped under the FHA; rather, they claim that Plaintiffs are simply unable to prove that they suffer from a qualifying handicap. *See* Defs.' Mem. in Supp. of MSJ, p. 12 (Docket No. 54, Att. 1). If the only foundation upon which this Court was to determine whether Plaintiffs were handicapped under the FHA was the allegations contained in Plaintiffs' Amended

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 7**

Complaint, the undersigned would tend to agree with Defendants. However, other evidence in the record exists to support such a claim for purposes of summary judgment consideration. Specifically, Plaintiff Bernard Morgan has heart disease and an associated mycobacterium fortuitum endocarditis infection. Plaintiff Marilyn Morgan has a history of breast cancer and a recent uterine cancer diagnosis. Plaintiffs' medical records suggest as much, with their medical providers recommending a climate-controlled environment as result. For example:

- In undated correspondence from Fernando Merino, M.D., to, *inter alia*, Brian Weiford, M.D., Dr. Merino stated: "I finally have the information that I needed to initiate treatment on Mr. Bernard Morgan (MR#919088). The final result of the AFB culture is Mycobacterium fortuitum."

- On August 26, 2013, Brian Weiford, M.D., stated: "Mr. Bernard Morgan has been a patient of Mid-American Cardiology for five years. We have been his personal heart physicians since knowing of his disability with serious Heart Disease. His basic needs are for cool and filtered air. It is important that he have access to a controlled environment."

- On September 11, 2013, Rita Hyde, MD, stated: "I am the primary care physician for [Marilyn L. Morgan]. She has suffered from cough and shortness of breath. I have advised her to reside and sleep in an air conditioned environment to assist in relieving her symptoms."

- On September 20, 2013, Julie A. Moore, M.D., stated: "Marilyn Morgan is requesting that she be allowed to have cool and filtered air for her basic comfort. We strongly agree that this patient needs to have these conditions met due to the fact that she has health concerns. She has a history of breast cancer and was most recently diagnosed with uterine cancer, and therefore, to optimize her health, we recommend that she have cool and filtered air."

Medical Records (Docket No. 54, Att. 16).[2,3]

---

[2] Drs. Weiford, Hyde, and Moore were identified as "Witnesses Pursuant to FRCP 26(a)(1)(A)(i)" in Plaintiffs' Initial Disclosures on January 31, 2014. *See* Pls.' Initial Disclosures, pp. 10-12 (Docket No. 54, Att. 14).

[3] Plaintiffs also claim that certain of their grandchildren are also handicapped and similarly need a climate-controlled environment. *See* Am. Verified Compl., ¶ 18 (Docket No. 40). The FHA makes it unlawful to discriminate against any person because of the handicap of "any person associated with that person." 42 U.S.C. § 3604(f)(2)(C). In this respect, on August 22, 2013, Dr. Carolyn T. Davis, M.D. stated:

Mrs. Morgan's own testimony about the limiting effects of her condition is in accord with Plaintiffs' doctors' recommendations, *e.g.*: "As a result of these medical impairments [(breast cancer and uterine cancer)], I have been significantly restricted in performing the major life activities of sleeping, walking, and other day to day activities, including caring for my husband." Morgan Aff., ¶ 4 (Docket No. 58, Att. 4). Though Mrs. Morgan may not be qualified to testify about specific medical diagnoses, she *is* permitted to testify to things she knows based on her personal experiences, such as her symptoms and the way her disability impacts her life. *See, e.g.*, *Southern California Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (declarant has personal knowledge of her own symptoms).[4]

The state of the medical record now before this Court, coupled with Mrs. Morgan's subjective complaints of disabling pain and corresponding limitations, arguably identifies a handicap recognized by the FHA. The fact that Plaintiffs' medical providers may not have a definitive opinion regarding whether Plaintiffs are actually handicapped (as that term is used in the FHA) is not fatal to their claim; it is one of many considerations that the jury will have to consider in determining whether Plaintiffs can establish their FHA-related claims. *See, e.g.*,

---

[Plaintiffs' grandson] has been a patient of mine since 5 months of age. He suffers from severe asthma and allergies. During periods of hot weather, it is best for his comfort to be in a climate-controlled environment, i.e., air conditioning.

Medical Records (Docket No. 54, Att. 16). Dr. Davis was also identified in Plaintiffs' Initial Disclosures on January 31. 2014. *See* Pls.' Initial Disclosures, p. 11 (Docket No. 54, Att. 14).

[4] Defendants move to strike statement or inferences contained in Mrs. Morgan's Affidavit that Plaintiffs are "handicapped" under the FHA. *See* Defs.' Mem. in Supp. of Mot. to Strike, p. 2 (Docket No. 75, Att. 1). The undersigned agrees that specific references are inappropriate and, in this limited respect, the Motion to Strike (Docket No. 75) is granted. However, Mrs. Morgan can testify about the effects of diagnosed illnesses, and those statements will not be stricken even though statements may go to whether she and/or her husband are handicapped. In this respect, Defendants' Motion to Strike (Docket No. 75) is denied.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 9**

*Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1059 (9th Cir. 2005) (in analogous ADA context, plaintiff not required to provide comparative or medical evidence to establish genuine issue of material fact regarding impairment of major life activity at summary judgment stage; rather, plaintiff's testimony may suffice to establish genuine issue of material fact); *Prindable v. Association of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1255 (D. Hawaii 2003) (letters from providers, even if insufficient to establish handicap within meaning of FHA, create genuine issue of material fact as to claimant's condition).[5]  In short, sufficient evidence exists to at least create a jury question as to whether Plaintiffs are handicapped under the FHA.

       *b.*     *Substantial Evidence Supports Plaintiffs' Argument that Defendants Knew of Plaintiffs' Alleged Handicap*

Defendants dispute whether Plaintiffs are handicapped under the FHA, but even so, there is no dispute that Defendants knew or should have known of Plaintiffs' claimed handicaps. Consider the parties' correspondence leading up to (and following) Plaintiffs' installation of the at-issue air conditioning unit:

- In July 2013, Plaintiff Bernard Morgan made a verbal request to the HOA Board of Directors ("Board") to allow installation of a refrigerated air conditioning unit to accommodate his and Plaintiff Marilyn Morgan's claimed handicaps.  *See* Bowen Aff., ¶ 2 (Docket No. 58, Att. 3).

- On August 19, 2013, Mr. Morgan wrote to the Board: "We are now moving ahead to complete this installation. **Five of our thirteen grandchildren have the disabilities of Asthma, Allergies, and Multiple Sclerosis.** We

---

[5]  In furtherance of this point, Defendants will no doubt also highlight what they perceive to be the shortcomings in the medical evidence – namely, that "Plaintiffs produced just six (6) pages of medical 'records'"; that the records produced "are conclusory and completely lacking in foundation"; and that "five of the six documents are dated *after* Plaintiffs installed the AC unit and the other document is not dated."  Defs.' Mem. in Supp. of MSJ, p. 12 (Docket No. 54, Att. 1) (emphasis in original).  These circumstances, however, do not warrant a finding that Plaintiffs are not handicapped as a matter of law at this stage of the proceedings.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 10**

must have a controlled environment of **cool, dry air** which is imperative for proper breathing. This air filled with smoke from the fires is a catastrophe. This XC17 will be perfect for all these conditions. **Our grandchildren will now be safe!!!** . . . . Now, any interference with our installation will be considered an attack on our grandchildren's disabilities, and the appropriate Government Agencies will be contacted." **Who among you will cast the first stone at our disabled grandchildren?** (Docket No. 58, Att. 4) (emphasis in original).

• On August 20, 2013, Mr. Morgan wrote a letter to the Board, stating: "This is to inform you of our various family diseases and the action necessary to protect our health in accordance with our disabilities. . . . Five of our thirteen grandchildren have disabilities of Asthma, Allergies, and the deadly Multiple Sclerosis (M.S.). . . . Personally, I have a serious heart condition with details that are not necessary to include. . . . We must have a controlled environment of cool, dry air which is imperative for proper breathing. . . . The smoke-filled air from the fires has been a catastrophe. . . . Air cooled air conditioning is our living solution. . . . We will be installing the most quiet and efficient central air cooled air conditioner money can buy. . . . We sincerely appreciate your understanding of our health needs. . . . We thank you for helping our grandchildren and me to be safe. Please understand our medical action, and make sure that no Director will interfere with our installation as it would be considered as an attack on our grandchildren's and my disabilities. The Americans with Disabilities Act and other appropriate Government Agencies would be contacted, and we sincerely do not want that to happen." 8/20/13 Ltr. (Docket No. 54, Att. 16).[6]

• On August 21, 2013, Plaintiffs wrote a letter to Defendant Anne Jacobi, stating: "The Federal Fair Housing Act and the American Disabilities Act requires accommodating Americans who are afflicted with disabilities. You have now been advised of our situation and expect all threats, fines, legal fees, and the like to be withdrawn or we will involve all appropriate Federal Government Agencies and give notice of your refusal of accommodating the disabled." 8/21/13 Ltr. (Docket No. 54, Att. 16).

• On August 22, 2013, Plaintiffs wrote a letter to Defendant John Haase, stating: "We are requesting that the Fairway Nine II Board grant a special

---

[6] Plaintiffs infer that, during this time, they provided actual medical documentation of their handicaps to Defendants. *See* Pls.' Mem. in Supp., p. 5 (Docket No. 58, Att. 1) (citing Morgan Aff., ¶ 6 (Docket No. 58, Att. 4). However, the medical records are dated in August and September – after Plaintiffs installed their air conditioning unit on August 21, 2013. Regardless, the dates of such documents do not impact this element of establishing an FHA claim.

accommodation of air-cooled air conditioning for our unit #4408. This accommodation is requested due to the needs of our families' disabilities, including Multiple Sclerosis, Severe Asthma, and Heart Disease to name just a few. Unless we hear from you in the affirmative by August 27, 2013, by noon, we will be forced to file a complaint with HUD under the Fair Housing Act. Thanks." 8/22/13 Ltr. (Docket No. 54, Att. 16).

• On September 8, 2013, Plaintiffs wrote a letter to the Board, stating: "We are in receipt on September 6, 2013 of the Board's decision to once again refuse our request for a special accommodation of air-cooled air conditioning despite the overwhelming need due to our disabilities. Prior requests for air-cooled air conditioning both oral and written, have been refused with no viable alternatives presented by the Board to mitigate our suffering. It is apparent the Board has little or no compassion for those who suffer medically and certainly has not read the <u>Articles of Incorporation</u>, Article VI, Paragraph A(2) '. . . . <u>The Management Body shall actively foster, promote, and advance the interest of owners of condominium units within the condominium project.</u>'" 9/8/13 Ltr. (Docket No. 58, Att. 4).

Therefore, assuming for these purposes on summary judgment that Plaintiffs do suffer from handicaps in the first instance (*see supra*), these communications considered most favorably in favor of the Plaintiffs raise a genuine issue of material fact as to whether the Defendants knew or should have known of this element of Plaintiffs' FHA claim.

> c.    *Even if Cool, Filtered Air in a Climate-Controlled Environment is a Necessary Accommodation, there is No Evidence that the As-Installed, Outside Refrigerated Air Conditioning Unit is a Necessary Accommodation.*

Proof of a prima facie FHA accommodation claim requires that the accommodation sought be "necessary to afford [the claimant] full enjoyment of the premises" . . . or "equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(A & B). That a requested accommodation be "necessary" naturally requires that the person requesting such an accommodation be compared to a person who is otherwise not handicapped – as an accommodation extends "full enjoyment" or "equal opportunity" only if and when it addresses the needs created by the handicap. In other words, a "necessary" accommodation is one that alleviates the effects of a

handicap.  *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008) (citing

*Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (*en banc*)

("[T]he statute requires only accommodations necessary to ameliorate the effect of the plaintiff's

disability so that she may compete equally with the non-disabled in the housing market.");

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 460

(3rd Cir. 2002) ("[I]f the proposed accommodation provides no direct amelioration of a

disability's effect, it cannot be said to be necessary."); *Bryant Woods Inn, Inc. v. Howard*

*County, Md.*, 124 F.3d 597, 604 (4th Cir. 1997) ("The FHA does not require accommodations

that increase a benefit to a handicapped person above that provided to a non-handicapped person

with respect to matters unrelated to the handicap."); *Forest City Daly Hous., Inc. v. Town of N.*

*Hempstead*, 175 F.3d 144, 152 (2nd Cir. 1999) (explaining that relevant inquiry is whether "the

non-complying features of the proposed residence are 'necessary' in light of the disabilities of

the proposed residents"); *see also Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir.

2003) ("To prove that an accommodation is necessary, '[p]laintiffs mush show that, but for the

accommodation, they likely will be denied an equal opportunity to enjoy the housing of their

choice.'") (quoting *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir.

1996)).

Here, the summary judgment record can support a scenario where Plaintiffs are

handicapped and that, owing to their handicaps, they need to have cool, filtered air in a climate-

controlled environment.  To be sure, Defendants apparently *want* Plaintiffs to have such an

environment.  *See, e.g.*, Defs.' Mem. in Supp. of MSJ, pp. 4-6 (Docket No. 54, Att. 1) ("The

reasonable accommodation is 'cool and filtered air' in [Plaintiffs'] condominium.  The Board

does not object (and never has) to the Morgans installing an air conditioning unit . . . . In fact, the record is that the Board wishes Mr. And Mrs. Morgan to receive an air conditioner [and] the accommodation of 'cool and filtered air' has never been denied . . . ."). Moreover, Plaintiffs' medical providers recommend an air conditioned environment to help in relieving the symptoms stemming from their claimed handicaps. *See supra*. Therefore, assuming Plaintiffs' handicaps to exist, it is reasonable to assume that cool, filtered air in a climate-controlled environment will help ease the effects of those handicaps and, as such, is a necessary accommodation under the FHA.[7]

Alas, cool and filtered air provided by an air conditioner alone is not the accommodation that Plaintiffs seek. Instead, Plaintiffs contend that only a *refrigerated* air conditioning unit (indeed, the one they actually installed on the outside of their condominium) provides what they claim is necessary for them to be able to fully enjoy their property. *See* Pls.' Mem. in Supp. of Mot. for PSJ, pp. 9-10 (Docket No. 58, Att. 1). This is the accommodation that must be "necessary" for Plaintiffs to prevail on their FHA claim. *See, e.g.*, *Prindable*, 304 F. Supp. 2d at 1256 ("The second element of an FHA claim directs Plaintiffs to show that the *requested accommodation* is necessary to afford Prindable an equal opportunity to use and enjoy unit 102 of the 2987 Kalakaua. In other words, Plaintiffs must demonstrate that preventing Prindable from housing Einstein [(Prindable's alleged service animal)] in unit 102 causes the denial of Prindable's right to equal use and enjoyment of unit 102.") (emphasis added).

---

[7] This is without considering Plaintiffs' need for cool, filtered air in a climate-controlled environment during non-summer months. Though vaguely addressed in the record, a suggestion has been made that central Idaho's hot summers, coupled with the extreme fire conditions during the Summer of 2013, contributed to Plaintiffs' need for refrigerated air conditioning. Such questions, to the extent pertinent here, present issues of fact.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 14**

In *Prindable*, the plaintiff requested an accommodation to keep a service animal (his dog, Einstein) in his apartment and submitted to the defendants a handwritten note on a prescription pad stating, "Prindable has a medical illness for which a dog is necessary for his improvement." *Id*. at 1249-50. The defendants asked for verification from a physician, to describe "the nature of the 'medical illness' or disability . . . and how a pet would alleviate the effects of this handicap." *Id*. at 1250. Instead, Prindable submitted a letter from his physician stating only that Prindable "has a medical illness for which a dog is necessary for his improvement." *Id*. The defendants wrote twice to the physician seeking additional information, promising that the information would be kept confidential, but the physician did not reply. *Id*. A behaviorist sent a letter to the defendants stating that Prindable had symptoms of depression and a pet would have a positive impact on Prindable's condition, recommending that animal-assisted therapy would assist in his improvement. *Id*. Another physician agreed with the behaviorist's diagnosis and recommendation in a separate letter to the defendants. *Id*. After the defendants informed Prindable his request would be reviewed at the next board of directors meeting, Prindable filed a housing discrimination complaint, alleging that the defendants failed to make a reasonable accommodation for him in light of his handicap. *Id*. at 1251.

The court acknowledged that, "[i]n certain circumstances, service animals may be necessary accommodations," but nonetheless granted summary judgment against Prindable, in part because there was insufficient evidence setting Prindable's dog apart from the ordinary pet. *Id*. at 1256. In this respect, the court reasoned:

> The primary handicap at issue in this case is mental and emotional (specifically, depression, anxiety, and dizziness) rather than physical in nature. It therefore follows that the animal at issue must be peculiarly suited to ameliorate the unique problems of the mentally disabled. . . . .

Prindable avers that "Einstein has been individually trained to provide emotional support[ ] and to alert me to any unusual circumstances." The record contains no additional admissible evidence of Einstein's qualifications as a trained service animal. Indeed, in response to questions from the Court, Plaintiffs' counsel acknowledged that Einstein is not individually trained and possesses no abilities unassignable to the breed or to dogs in general.

Obviously, a dog cannot acquire discernable skills as a service dog without some type of training. Unsupported averments from Prindable and slight anecdotal evidence of service are not enough (particularly in light of counsel's candid admission) to satisfy Plaintiffs' burden in opposition to summary judgment. Plaintiffs needed something more – an affidavit detailing Einstein's training, a declaration from Einstein's veterinarian or a certificate from any licensed training school – to survive summary judgment. Again, this is not a heavy burden. But the Court has searched the record and finds nothing that would lead a reasonable jury to conclude that Einstein is an individually trained service animal.

It also remains whether [the defendants'] refusal to allow an exemption from article VI, § 11 [of the bylaws for the 2987 Kalakaua] caused Prindable to be denied equal use and enjoyment of unit 102. There is little evidence going to this question, but it follows that if there is no genuine issue of material fact as to whether Einstein is an individually trained service animal capable of assisting Prindable in a relevant way, there is likewise no genuine issue of material fact as to whether the accommodation is necessary. In other words, if Einstein is not a proper service animal (as opposed to just a pet), an exemption from article VI, § 11 for Einstein is not necessary to afford Prindable an equal opportunity to use and enjoy the dwelling.

*Id*. at 1256-57 (internal quotation marks and citations omitted).[8]

As in *Prindable*, Plaintiffs' refrigerated air conditioning unit can only be a necessary accommodation under the FHA if it is "peculiarly suited to ameliorate the unique problems" presented by Plaintiffs' handicaps. Plaintiffs treat this requirement rather matter-of-factly, stating that, "[b]ased on their own experience, the Morgans know that the treatment that works

---

[8]  Though *Prindable* has since been criticized for the way the court adopted and applied the Americans with Disabilities Act's standard for service animals (requiring proof of individualized training), there is nothing arguably misplaced in the court's discussion of an FHA plaintiff's burden to show that the requested accommodation is necessary in mitigating a handicap's effects. *See, e.g.*, *Sanzaro v. Ardiente Homeowners Ass'n LLC*, 21 F. Supp. 3d 1109, 1118-19 (D. Nev. 2014).

for them is a refrigerated air conditioner."  Pls.' Mem. in Supp. of Mot. for PSJ, p. 10 (Docket No. 58, Att. 1).[9]  However, even if refrigerated air conditioning helps with Plaintiffs' alleged handicaps, neither their statement that refrigerated air condition "works for them" or anything else in the record establishes a *prima facie* showing that *refrigerated* air conditioning  is uniquely suited – "necessary" – to treat those handicaps.  The Court is persuaded, as was the court in *Prindable*, that "unsupported averments . . . and slight anecdotal evidence . . . are not enough" to meet that requirement of necessity.  *See also Ramos v. Neumann*, 417 Fed. Appx. 640, 641-42 (9th Cir. 2011) (upholding district court's grant of summary judgment because plaintiff failed to show causal link between trampoline use and treatment of handicap, reasoning: "[w]hile the Ramoses' personal experience may indicate that the trampoline was helpful to K.R., that is not sufficient to carry their burden.").  Said another way: what is it about *refrigerated* air conditioning in particular (as opposed to other available types of air conditioning) that makes that particular means of obtaining cool, filtered air "necessary" (rather than simply preferable) to treat the symptoms of Plaintiffs' handicaps?

Plaintiffs supply no evidence speaking to this nuanced point.  Plaintiffs' medical providers reference only Plaintiffs' generalized need for "an air conditioned environment," "cool and filtered air," a "controlled environment," and a "climate-controlled environment, i.e., air conditioning."  *See supra*.  For those concerns, *any* type of air conditioning is adequate to treat Plaintiffs' conditions, so long as it supplies cool and filtered air in a climate-controlled

---

[9]  In support of this statement, Plaintiffs cite to paragraph 10 of Plaintiff Marilyn Morgan's Affidavit.  However, there, Mrs. Morgan only discusses an August 28, 2013 letter from the Board; she does not discuss how refrigerated air conditioning impacts Plaintiffs' alleged handicaps generally, or how refrigerated air conditioning is the only type of air conditioning that addresses their alleged handicaps specifically.  *See* Morgan Aff., ¶ 10 (Docket No. 58, Att. 4).

environment.  Without more, this does not make *refrigerated* air conditioning a necessary accommodation – i.e., that, but for *refrigerated* air conditioning, Plaintiffs will be denied an equal opportunity to use and enjoy their condominium.  It may be a preference, but it is not a need.  The distinction is starkly apparent in Plaintiff Bernard Morgan's deposition testimony on the subject:

> Q:  Had you ever asked the Board to install a water-cooled air conditioning unit in your unit?
>
> A:  In my unit?
>
> Q:  Yes.
>
> A:  Absolutely not.
>
> Q:  Why not?
>
> A:  Because we are very familiar – we have three, the finest air conditioners in the country in our home in Prairie Village, Kansas, and we knew that they work for us and for our disabilities.  And that's what we put in our home.
>
> . . . .
>
> Q:  Do you have any information or knowledge as we sit here today whether the water-cooled air conditioning unit is less efficient than the one you currently have installed on the common area?
>
> A:  I don't know anything about that personally.
>
> Q:  If it was shown to you that the water-cooled air conditioning system was as efficient and would meet your medical needs and the medical needs of your wife, would you then have a water-cooled air conditioning system installed?
>
> A:  No.
>
> . . . .
>
> Q:  Okay.  Is it your testimony that you did not know that room-based air conditioning units was another alternative method for air conditioning?
>
> A:  I had no interest.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 18**

Q:   But that wasn't my question.

A:   Well, that's my answer.

Q:   But my question was: You knew – let me ask it a different way, Bernie.  You knew, didn't you, in 2013 that in addition to water-cooled units, the Board would also approve room-based air conditioning units?  You knew that.

A:   I probably heard about it.

Q:   So you knew that, right?

A:   Could be.  Could be, yeah I'll say I did.  Had no interest.

Q:   And like the water-cooled air conditioning unit, whether or not it was as efficient as the unit that you installed in the common area, you would not have elected to install or utilize a room-based air conditioning solution?

A:   No.  I would not have been interested.

      . . . .

Q:   You agree that a water-cooled air conditioning system is an accommodation that is available to you and your wife should you request it.

A:   Yes, but we would not request it.

Q:   Okay.  So where we disagree is whether or not that is a reasonable accommodation, correct?

A:   It is not reasonable to us.

Q:   I understand.  Because what you want is a traditional outside air-compressed air conditioning unit.

A:   Refrigerated air conditioner, yes.

Q:   And in your mind is that the only reasonable accommodation that should be made here?

A:   Yes.

Q:   So there is no other reasonable accommodation to you.

A: Just what I stated.

Q: But that's a true statement, is it not?

A: Is what?

Q: What I just said.

A: State it again please.

Q: So to you there is no other reasonable accommodation.

A: It's our preference for refrigerated air conditioning.

Q: Therefore, because it's your preference, in your mind, there is no other reasonable accommodation that you would make or accept in this situation, correct?

A: Correct, because we already have experience.

. . . .

Q: Why is it that you wouldn't consider [an air-compressed air conditioning unit in your garage] as an alternative?

A: I don't need an alternative. I already know. I'm 84 years old and I have air conditioning in my home in Prairie Village Kansas, I have it here. I know what I need and I know it's proven. It's proven. It's proven in the United States of America, and I believe that. And that is what we need, that is what our needs are, period.

Q: But that didn't answer my question. Why is it that you would not consider a garage-based air-compressor system?

A: Because I like the other better. It's more proven in America, period.

. . . .

Q: Assume with me if we can.

A: Okay. I assume.

Q: That we could take that same air conditioning unit, that same compressor that you have in the common area and install it into your garage, okay? That same unit.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 20**

A:   Yeah.  Okay.

Q:   Would you consider that?

A:   No, because we use our garage for other things.

Q:   So the answer to my question is you wouldn't consider that?

A:   No, absolutely not.

Q:   You want it where you want it.

A:   Right.

Q:   You want what you want.

A:   Yes.

Q:   So whether or not there are other available alternatives to you is irrelevant.

A:   That's right.

Morgan Depo. at 34:25-35:10; 37:3-13; 38:13-39:8; 44:19-45:23; 52:10-23; 53:2-21 (Docket No. 54, Att. 5).

In short, the record evidences Mr. Morgan's rigid insistence on a refrigerated air conditioner unit is premised on nothing more than the fact that he wants what he has had, not because other modes of air conditioning are incapable of meeting his medical needs.  This record contains no evidence of some unique or other distinguishing characteristic that would change refrigerated air conditioning from simply one option among several to meet Plaintiffs' needs into a singularly necessary form of air conditioning that fits the definition of a necessary accommodation under the FHA.[10]

_____

[10] There are other courts that have considered the necessity requirement a bit differently – namely, to inquire no further than whether the requested accommodation simply addresses a

Therefore, while cool and filtered air in a climate-controlled environment may be a necessary accommodation to the extent it helps treat Plaintiffs' claimed handicaps, there is no discrete causal link between refrigerated air conditioning specifically and any such treatment. Stated slightly differently, no evidence exists that the prohibition against outside-installed, refrigerated air conditioning units prevents Plaintiffs' equal opportunity to use and enjoy their condominium as a matter of law.

> d. *Even if Cool, Filtered Air in a Climate-Controlled Environment is a Reasonable Accommodation, Plaintiffs Offer No Evidence that Their As-Installed Air Conditioning Unit is a Reasonable Accommodation*

"A reasonable accommodation 'can involve changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual.'" *Prindable*, 304 F. Supp. 2d at 1257 (quoting *Hubbard v. Samson Mgmt. Corp.*, 994 F. Supp. 187, 189 (S.D.N.Y. 1998)). However, "there is no 'obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well.'" *Prindable*, 304 F. Supp. 2d at 1257 (quoting *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)). "[A] necessary accommodation will typically be considered reasonable 'when it imposes no

---

handicap's needs, regardless of the existence of alternative accommodations. *See, e.g.*, *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014) ("Some other arrangement . . . might similarly alleviate Bhogaita's symptoms, and evidence of such could be relevant to the reasonableness determination, which asks whether the requested accommodation is both efficacious and proportional to the costs to implement it. It is not, however, relevant to the necessity determination, which asks whether the requested accommodation ameliorates the disability's effects.") (internal quotation marks and citations omitted). However, approaching this element of an FHA claim in such a way changes any reasonable understanding of the meaning of the word "necessary" when analyzing whether an accommodation is, in fact, necessary. Perhaps this explains why some courts read into the necessity of accommodation element of an FHA claim a reasonableness element as well. *See, e.g.*, *Giebeler*, 343 F.3d at 1148-49. Regardless, while it can be argued that air conditioning alleviates the effects of Plaintiffs' handicaps, and that, naturally, refrigerated air conditioning likewise alleviates those same effects, refrigerated air conditioning is not reasonable under the circumstances present here, even if considered necessary.

undue financial or administrative hardships on the defendant . . . and when it does not undermine the basic purpose of the [challenged] requirement.'" *Prindable*, 304 F. Supp. 2d at 1257 (quoting *Hubbard*, 994 F. Supp. At 190); *see also Giebler*, 343 F.3d at 1157.[11]

In this case, it is obvious that cool, filtered air in a climate-controlled environment is a reasonable accommodation.  Defendants say that even if they were to concede that Plaintiffs are entitled to an accommodation, air conditioning is and always has been available to Plaintiffs. *See* Defs.' Mem. in Supp. of MSJ, p. 5 (Docket No. 54, Att. 1) ("This *accommodation* [(an air conditioner)] has never been denied and, in fact, has always been available to Plaintiffs.") (emphasis in original).  However, in that particular space, Plaintiffs cannot demonstrate that each and every possible mechanism for providing cool, filtered air in a climate-controlled environment is, *ipso facto*, also reasonable.

The heart of this issue traces to the Fairway Nine II CCR prohibition against outside, refrigerated air conditioner units.  *See* CCR, § 10.11 (Docket No. 58, Att. 6) ("No clothes lines, television antennas, wiring or installation of air conditioning or other machines shall be installed on the exterior of the building or be allowed to protrude through the wells, the windows or the roof of the building, unless the prior written approval of the Board of Directors is secured.").

---

[11]  As to the burden of proving reasonableness, the Ninth Circuit in *Giebler* looked to the Rehabilitation Act and the Americans with Disabilities Act for assistance.  Under the Rehabilitation Act, the plaintiff bears the initial burden of proof that a reasonable accommodation was possible.  *See id*.  The burden then shifts to the other party to prove that it is not reasonable.  *See id*.  Under the ADA, the plaintiff has the initial burden to show that the accommodation "'seems reasonable on its face.'" *Id*. (quoting *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002)).  The Defendant then has the burden to prove that the accommodation would cause undue hardship.  *See id*.; *see also* Pls.' Mem. in Supp. of Mot. for PSJ, p. 4 (Docket No. 58, Att. 1).  Despite these slightly different formulations of the standard, the Ninth Circuit declined to chose one particularly described approach, noting that application of either standard led to the same result in that particular case.  *See id*. at 1157.  Similarly, this Court finds that application of either standard would yield the same result here.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 23**

And, inescapably, Plaintiffs' actual installation of a refrigerated air conditioning unit on the outside of their condominium runs afoul of the HOA/CCR rules. But such a violation is not necessarily an administrative hardship for the purposes of whether a requested accommodation is an undue burden or otherwise unreasonable. *See, e.g.*, *Kulin v. Deschutes Cnty.*, 872 F. Supp. 2d 1093, 1100 (D. Or. 2012) ("[S]imply because a requested accommodation would alter a substantive rule or regulation does not render it unreasonable or unduly burdensome.") (citing *Martin v. PGA Tour, Inc.*, 994 F. Supp. 1242, 1247 (D. Or. 1998)); *see also* Pls.' Resp. to Defs.' MSJ, pp. 10-11 (Docket No. 57) ("To argue that any modification is an unreasonable administrative burden if it violates the policies of the Defendant would render the Fair Housing Act irrelevant . . . . This position is one that, if the court accepted, would essentially allow Defendants to insulate themselves from the Fair Housing Act by drafting other rules that are discriminatory on their face.").

Instead, "[a]n accommodation imposes an undue financial or administrative burden if its costs are clearly disproportionate to the benefits it will produce." *Kulin*, 872 F. Supp. 2d at 1100 (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2nd Cir. 1995)). Here, the burden and costs associated with allowing Plaintiffs to install a refrigerated air conditioning unit on the outside of their condominium outweigh the benefits that might result. Plaintiffs do not *require* refrigerated air conditioning to address the symptoms of their handicaps. Other forms of air conditioning could adequately meet their medical needs. Refrigerated air conditioning is Plaintiffs' preferred form of air conditioning – they have refrigerated air conditioning at their home in Kansas and it works for them there. A preference for that type of air conditioning, however, is not evidence that other methods of providing cool, filtered air are inadequate to their

needs. The record just does not bear out such a claim, even if Plaintiffs might suggest that it is somehow implied by their circumstances.[12] Plaintiffs' medical providers have never opined to that effect and Plaintiffs' mere desire for a certain type of air conditioning does not, by itself, establish as much. In contrast, the HOA has put forward sensible reasons for the prohibition against such units – they create noise (which travels beyond a particular condominium that might install such a unit) which detracts from the peace and quiet that otherwise is a valued characteristic of the development, and they are aesthetically displeasing. Hence, allowing the Plaintiffs' preferred form of air conditioning would not only violate the Fairway Nine II Homeowners' Association's directives *per se*, it also would create conditions the rules were designed to prevent – namely, noisy and unattractive outside air conditioning units in areas shared by neighboring condominium owners.

Simply put, the record does not contain any persuasive reason to support a claim that a refrigerated air conditioning unit installed on the outside of Plaintiffs' condominium is a reasonable accommodation to address Plaintiffs' handicaps. The legitimate concerns over a need for cool, filtered air can be met by alternatives that do not raise even a genuine issue of fact as to whether they could possibly outweigh the legitimate interests served by the HOA's prohibition

---

[12] In fact, Defendants present the affidavits of other residents, commenting on their satisfaction with water-cooled air conditioning units. *See, e.g.*, Hasse, Town, Banchik, Feldman, Grohmann, Downie, & Judell Affs. (Docket No. 54, Atts. 3, 7-11, & 13). Plaintiffs seek to strike those portions of these affidavits that contain testimony discussing the efficiency and comparative benefits of a water-cooled air conditioning unit. *See* Pls.' Mot. to Strike (Docket No. 56). However, at this juncture, these affidavits are sufficient evidence that other, viable air conditioning options exist and have been put to use with good results. The affiants can testify to this ultimate fact as such statements are well within the competency of a lay witness with direct knowledge, regardless of the technical mechanical and engineering ins-and-outs of why they may think they way they do. Further, more elaborate testimony is not needed to resolve this element of an FHA claim, as it is Plaintiffs' burden to establish the reasonableness of the requested accommodation which necessarily implies that other options do not work as well. Therefore, Plaintiffs' Motion to Strike (Docket No. 56) is denied.

against such units.  Whatever benefits flow to Plaintiffs in the installation of such a unit are

outweighed by the costs to Defendants and others.  As a result, no evidence exists that Plaintiffs'

as-installed, outside refrigerated air conditioning unit is a reasonable accommodation as a matter

of law.[13]

> e.    *A Question of Fact Exists As to Whether Defendants Refused to Make the
> Requested/Reasonable Accommodation*

As previously discussed, housing providers are not required under the FHA to immediately

grant all requests for accommodation.  *See Prindable*, 304 F. Supp. 2d at 1258 ("'[T]he duty to

make a reasonable accommodation does not simply spring from the fact that the handicapped

person...wants such an accommodation made.'") (quoting *Gavin v. Spring Ridge Conservancy,*

*Inc.*, 934 F. Supp. 685, 687 (D. Md. 1995)).  "Defendants must instead have been given an

opportunity to make a final decision with respect to Plaintiffs' request, which necessarily

includes the ability to conduct a meaningful review of the requested accommodation to

determine if such an accommodation is required by law."  *Prindable*, 304 F. Supp. 2d at 1258

(internal citations omitted).  "Once allowed that opportunity, 'a violation occurs when the

disabled resident is first denied a reasonable accommodation, irrespective of the remedies

granted in subsequent proceedings.'"  *Id*. (quoting *Groome Resources Ltd., LLC v. Parish of*

*Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (quoting *Bryant Woods Inn*, 124 F.3d at 602)).

---

[13]  If a defendant determines that a requested accommodation imposes unreasonable
costs, they are required to engage in an "interactive process" with the plaintiff to explore
alternatives.  *See Smith v. Powdrill*, 2013 WL 5786586, *7 (C.D. Cal. 2013).  Plaintiffs argue
this did not happen.  *See* Pls.' Resp. to Defs.' MSJ, p. 5 (Docket No. 57).  However, this
argument fails of its own weight, in that accepted alternatives existed to (and were used instead
of) refrigerated air conditioning units generally (e.g., water-cooled and inside room-based air
conditioning units).  Nonetheless, there is an open question in this record as to whether such
alternatives were available to Plaintiffs when they installed the refrigerated air conditioning unit
on the outside of their condominium in August 2013.  *See infra*.

Unless and until a reasonable accommodation is denied, there is no discrimination under the FHA. *See* 42 U.S.C. § 3604(f)(3)(B). Similarly, unless there is or is about to be an occurrence of discrimination, there is no cause of action. *See* 42 U.S.C. § 3613(c)(1). "The denial can be either actual or constructive, 'as an indeterminate delay has the same effect as an outright denial.'" *Prindable*, 304 F. Supp. 2d at 1258 (quoting *Groome Resources*, 234 F.3d at 199).

Defendants say that they "did not refuse the requested accommodation." *See* Mem. in Supp. of Defs.' MSJ, p. 4 (Docket No. 54, Att. 1). But, in fact, Defendants refused Plaintiffs' request to install a refrigerated air conditioning unit in the Summer of 2013 – the genesis of this action. Defendants apparently mean to say that they never refused a request for a *reasonable* accommodation, either in the form of a water-cooled or inside room-based air conditioning unit. *See id.* ("The reasonable accommodation is 'cool and filtered air' in his condominium. The Board does not object (and never has) to the Morgans installing an air conditioning unit. The only disagreement here is the placement and/or the type of unit that can be installed."). But this statement is also not precisely correct, because at the time Plaintiffs were looking to install their refrigerated air conditioning unit the Board was postponing consideration of *any* request for *any* type of air conditioning unit – regardless of whether it was for a water-cooled, inside-room based, or some other form of air conditioning unit. The purported justification for the postponement of consideration of such requests stemmed from an action taken in June 2013 by the Sun Valley Sewer and Water Board ("SVSWD") to impose a six-month moratorium on the future installations of "water based" air conditioning units. *See* Pls.' U.F. No. 5 (Docket No. 54,

Att. 2) (citing Haase Aff., ¶ 16 (Docket No. 54, Att. 3)).[14]  This moratorium had the effect of

halting *every* request to install air conditioning units at the Fairway Nine II Condominium

complex, as reflected in the Board's July 15, 2013 meeting minutes:

> The Board unanimously agrees to postpone Mr. Bowen's request to install an A/C unit. At a previous meeting, *the Board agreed to postpone all requests until the moratorium is over.* There has been a lot of misguided information about the Board's position on the installation of A/C units at Fairway Nine II. The Board would like to dispel this from continuing by having an informative meeting, at 4398 deck, on the topics of A/C at Fairway Nine II and the moratorium. The Board wants the homeowners to know that they are not saying no to air conditioning. There are a lot of A/C options and the Board is taking everything into consideration, to ensure that the decision made is best for all homeowners. A motion was made to . . . meet with homeowners to discuss the moratorium and A/C at Fairway Nine II. In addition, a letter will be sent out to all homeowners explaining the moratorium and *why the Board has decided to not approve any A/C requests until the moratorium is over.* The motion was seconded and a majority of the Board was in favor.

7/15/13 Minutes (Docket No. 58, Att. 4) (emphasis added). Similarly, in a September 6, 2013

letter to the Plaintiffs, the Board said, in part:

> We understand your issues. The Board . . . will continue to work to provide adequate air conditioning options . . . by the next summer season, regardless of any action that may be taken by the Sun Valley Water and Sewer System as the current moratorium expires. *You may then reapply for installation of such an approved system.*

9/6/13 Ltr. (Docket No. 58, Att. 4) (emphasis added). Then again, in a September 12, 2013 letter

to Plaintiff Bernard Morgan, the Board said:

> The Fairway Nine II Board of Directors held their Board meeting today and reviewed your request to install a Lennox, XC17, Air Cooled (refrigerated) Air Conditioner.

---

[14]  Defendants argue that, because Plaintiff Bernard Morgan lobbied for the moratorium purportedly so that he could install his outside refrigerated air conditioning unit, "he cannot now hide behind it and claim he had no other choice. If this is Mr. Morgan's argument, it is completely lacking in merit." *See* Defs.' Mem. in Supp. of MSJ, p. 8 (Docket No. 54, Att. 1). Defendants supply no legal footing for their argument, and it is without merit factually because it was the SVSWD – not Mr. Morgan – which issued the moratorium on installing "water based" air conditioning units. The fact that Mr. Morgan may have agreed with the moratorium's purpose or even sought to somehow orchestrate it is of no legal moment on this point.

As you know, there now exists a moratorium on installation of water-cooled air conditioners, which are the air conditioners now approved for our condominiums. The Water & Sewer Department officials are studying these air conditions, and we are providing information to them based on our experience and information that has been made available to us.

*Requests for all air conditioners will be delayed until sometime after the moratorium process has concluded and a decision has been made.*

The Board will collect information on all types of air conditioners and research the possibilities to determine what the best is for all the homeowners.

9/12/13 Ltr. (Docket No. 58, Att. 4) (emphasis added).  This correspondence indicates the Board viewed its required approval extending to all types of air conditioners[15] and that until the SVSWD's moratorium on water-cooled air conditioners expired, the Board would not be approving any types of air conditioners.

Accordingly, it is incorrect to state as a matter of law – as Defendants have here – that "[r]oom-based air conditioners have ALWAYS been an acceptable option."  Defs.' Mem. in Supp. of MSJ, p. 8 (Docket No. 54, Att. 1) (emphasis in original).  Arguably, so long as Plaintiffs were unable to receive cool, filtered air in a climate-controlled environment during the six-month moratorium, Defendants refused to make either the requested (refrigerated air conditioning) – or even reasonable (water-cooled or inside, room-based air conditioning) – accommodations during that time.  The record is too underdeveloped to determine that to

---

[15]  Board approval seems necessary not only for outside-installed air conditioning units (like the refrigerated air conditioning unit Plaintiffs installed), but also water-cooled and inside room-based air conditioning units.  *See, e.g.*, Haase Aff., ¶ 3 (Docket No. 54, Att. 3) ("The Board *would approve* a water based system like the others that have been installed or *would approve* a room based air conditioner.") (emphasis added).  Elsewhere, Defendants argue that inside room-based air conditioning units have never been denied – even during the moratorium.  *See* Defs.' Reply in Supp. of MSJ, p. 7 (Docket No. 61).  At the very least, a question of fact exists on this point.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 29**

actually be the case as a matter of law.  Still, after the moratorium was lifted – and presumably with water-cooled and/or inside room-based air conditioners available to Plaintiffs – reasonable accommodations exist to account for and treat Plaintiffs' claimed handicaps.  As a result, and particularly so with inferences drawn in favor of the non-movant, questions of fact exist as to whether Defendants refused to make the requested/reasonable accommodation.[16]

2.      Individual Defendants' Liability Under the FHA

Defendants seek dismissal of the individual Defendants, arguing that there is no evidence that any individual Defendant acted outside his or her role either as members of the Board or as property manager for Pioneer West Property Management, LLC.  *See* Defs.' Mem. in Supp. of MSJ, pp. 13-15 (Docket No. 54, Att. 1) ("In order to have a cause of action against the individually-named Defendants, Plaintiffs must prove that they acted outside the scope of their respective roles within the two organizations.").  In essence, Defendants argue that the individual

---

[16]   The Court acknowledges that Defendants argue that Plaintiffs have not been damaged because they have actually installed a refrigerated air conditioning unit on the outside of their condominium.  *See* Defs.' Mem. in Supp. of MSJ, p. 11 (Docket No. 54, Att. 1) ("Plaintiffs installed an air conditioner on August 21, 2013 and it has been in use since that time.  As a consequence, Plaintiffs have never been without the accommodation they requested . . . .  The Board may disapprove of its placement in the common area, but given that the accommodation is *currently* in place, Plaintiff cannot prove resulting damage from an alleged denied accommodation . . . .  This argument is not ripe for a decision at present.") (emphasis in original).  However, this argument ignores the fact that Defendants have assessed (or threatened to assess) fines against Plaintiffs and recorded a lien upon their condominium due to the fact that they installed the refrigerated air conditioning unit in violation of the CCRs.  *See* Pls.' Opp. to Defs.' MSJ, pp. 11-12 (Docket No. 57) ("Defendants' position that Plaintiffs have not suffered any damage is contrary to fact, as damages continue to incur literally every day.  Defendants impose daily fines on Plaintiffs . . . . have placed a lien on the Plaintiffs' home . . . . [and] continue to spread misinformation to the residents of Fairway Nine II, damaging the Morgans' reputation in the community.").  Had that not been the case, Defendants argument in this regard might have greater traction.

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 30**

Defendants cannot be held liable in an individual capacity merely based upon their association with the decision-making entities involved here (the Board and property management company ).

Other courts have ruled that directors who participate in, authorize, or ratify the commission of a FHA violation may be held individually liable. *See Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227 (W.D. Wash. 2012); *but see Rosenfeld v. Hackett*, 2010 WL 5067960, *2 (D. Or. 2010) (citing "lack of clear guidance from statutory language or reported case law in FHA accommodation cases," relying upon "closely related field of disability discrimination under Title VII and the Americans with Disabilities Act" in prohibiting individual capacity claims against individual defendants).[17] Significantly, an independent tortious act is not required. *See United States v. Tropic Seas, Inc.*, 887 F. Supp. 1347, 1365 (D. Hawaii 1995) ("Because the duty to comply with the Fair Housing Act is nondelegable, a corporation's officers and directors may be held individually liable for their failure to ensure the corporation's compliance. This is so even where the individual director or officer did not actively participate in the alleged discrimination and did not subjectively intend to discriminate against the complainant.") (internal citations omitted).

Here, Plaintiffs' allegations create a genuine issue of material fact as to whether the individual Defendants contributed in some way to the alleged refusal to reasonably accommodate Plaintiffs. These Defendants wrote letters to Plaintiffs rejecting their request for a refrigerated air conditioner. *See, e.g.*, 8/21/13, 9/12/13 & 10/25/13 Ltrs. from Pioneer West and

---

[17] In *Rosenfeld*, however, the plaintiff never made a request for accommodation directly to the individually-named defendant seeking judgment on the pleadings; instead, her request was made to Housing and Urban Development. *See Rosenfeld*, 2010 WL 5067960 at *2.

9/6/13, 9/16/13[18] & 1/8/14 Ltrs. from Board (Docket No. 58, Att. 4).  Because Defendants'

refusal to grant such a request is the basis for Plaintiffs' refusal-to-accommodate claim under the

FHA, it follows that these individual Defendants personally contributed to the alleged FHA

violation.  *Cf.* Pls.' Resp. to Defs.' MSJ, pp. 12-13 (Docket No. 57) ("[T]he Board had sole

control over its choice to discriminate, and did so . . . .  Similarly, Anne Jacobi, as agent for the

Board, advised the Board on the same and enforced the Board's decision, thus showing she has

also violated the Fair Housing Act.").

Of course, this presumes that Plaintiffs' actual FHA claims have merit – something that is

not altogether clear based upon the discussion of the issues contained herein. Whether Plaintiffs

can ultimately prove such a violation remains to be seen, but at this state the claims against the

individual Defendants cannot be resolved as a matter of law upon the rationale put forward by

Defendants.  Therefore, Defendants' Motion for Summary Judgment in denied in this respect.

3.     Summary of Recommendations Regarding the Cross Motions
       for Summary Judgment

As to Defendants' Motion for Summary Judgment, a question of fact exists as to whether

Defendants refused a reasonable accommodation during the period of the SVSWD's six-month

moratorium, with the related decision by the Board to arguably not approve any air conditioning

requests during the moratorium.  Given the evidence of the individual Defendants' role in the

refusal of such an accommodation, they should not be dismissed at this time.

As to Plaintiffs' Motion for Partial Summary Judgment, there are genuine issues as to

whether Plaintiffs are indeed handicapped under the FHA and whether refrigerated air

---

[18]  This letter from the "Fairway Nine II Board of Directors" was written on Pioneer West
Property Management LLC letterhead.  *See* 9/16/13 Ltr. (Docket No. 58, Att. 4).

conditioning is either a necessary or reasonable accommodation under the circumstances presented by those handicaps.[19]

Therefore, it is recommended that each of the summary judgment motions be denied. To be clear, what remains at-issue as a result (although not neatly framed by the parties' as-filed dispositive motions) is whether an FHA claim exists during the period represented by the six-month period coinciding with the SVSWD's moratorium.

**B.      Plaintiffs' Motion to Dismiss/Strike Defendants' Counterclaim and Defendants' Motion to Amend Answer to Include Verified Counterclaim**

Plaintiffs filed their Complaint on November 7, 2013. On December 2, 2013, Defendants filed their Answer. On June 23, 2014, after the Court adopted the parties' Stipulation to File Amendments to the Pleadings, Plaintiffs filed an Amended Complaint. The next day, Defendants filed a Verified Counterclaim. Defendants' actual Answer to Plaintiffs' Amended Complaint was filed on July 21, 2014.[20]

---

[19] Plaintiffs have also moved to strike several exhibits attached to Defendants' opposition to Plaintiffs' Motion for Partial Summary Judgment. *See* Pls.' Second Mot. to Strike (Docket No. 73). Though certain of Plaintiffs' objections in this respect may have merit as discussed more fully during oral argument, the undersigned did not consider the materials at issue in the motions when considering the underlying dispositive motions. Therefore, Defendants' Second Motion to Strike (Docket No. 73) is denied as moot.

[20] Defendants' Answer to Plaintiffs' Amended Complaint did not set out separately identified counterclaims in the customary and appropriate form. However, their Sixth Affirmative Defense said that:

> Plaintiffs have been and are currently in violation of the applicable CCRs and Bylaws and, consequently, Defendants are entitled to a judgment in its favor, its costs and fees, and all other relief that the Court deems appropriate and just. *The Counterclaim filed by the Defendants states in more reasonable detail its [sic] claims for relief.*

Ans., p. 6 (Docket No. 44).

**REPORT AND RECOMMENDATION, DECISION AND ORDER - 33**

Plaintiffs now move to strike Defendants' Verified Counterclaim because it "was not filed as part of Defendants' Answer or any other allowable pleading" under the Federal Rules of Civil Procedure. *See* Pls.' Mem. in Supp. of Mot. to Strike, p. 3 (Docket No. 60, Att. 1). Defendants oppose this motion and alternatively move to amend their Answer to include their Verified Counterclaim. *See* Defs.' Opp. to Mot. to Strike (Docket Nos. 67 & 68).

Plaintiffs do not oppose Defendants' request to amend its Answer to include the Verified Counterclaim. Moreover, good cause exists to do so given that Defendants' Answer referenced the previously-filed Verified Counterclaim. There is no prejudice to Plaintiffs if Defendants' requested amendment is permitted.

Therefore, Defendants' Motion to Amend Answer to Include the Verified Counterclaim (Docket No. 68) is granted. As such, Plaintiffs' Motion to Dismiss and/or Strike Defendants' Counterclaim (Docket No. 60) is denied as moot.

## III.  RECOMMENDATION/ORDER

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment (Docket No. 54) be DENIED;

2.      Plaintiffs' Motion for Partial Summary Judgment (Docket No. 58) be DENIED; and

3.      Plaintiffs' Motion to Dismiss and/or Strike Defendants' Counterclaim (Docket No. 60) be DENIED as moot.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to

exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

Also based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Strike Affidavits of Jack Haase, Daniel Feldman, Thomas Grohmann, Howard Banchik, Ken Downie, Eileen Juddell, and Dave Town (Docket No. 56) is DENIED;

2. Defendants' Motion to Amend Answer to Include Verified Counterclaim (Docket No. 68) is GRANTED;

3. Plaintiffs' Second Motion to Strike (Docket No. 73) is DENIED as moot; and

4. Defendants' Motion to Strike the Affidavit of Marilyn Morgan (Docket No. 75) is GRANTED, in part, and DENIED, in part.

DATED:  **February 11, 2015**



Honorable Ronald E. Bush
U. S. Magistrate Judge